# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JAMES PATRICK FINNERTY III,**

      **Plaintiff,**

v.                                                  **Case No:   6:17-cv-980-Orl-37KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Plaintiff James Patrick Finnerty III seeking review of the final decision of the Commissioner of Social Security denying his claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 12, 14, and the parties' Joint Memorandum,[1] Doc. No. 16.

### PROCEDURAL HISTORY.

In 2011, Finnerty filed applications for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401, *et seq.*, and under the Supplemental Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq.*

---

[1] I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record. Doc. No. 15. Counsel for Finnerty was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Scheduling Order. *Id.* at 4.

R. 167, 171. He initially alleged that he became disabled on April 5, 1998, *see id.*, but he later amended the alleged disability onset date to July 6, 1998, *see* R. 39-40, 186.

After his applications were denied at all levels of administrative review, Finnerty filed a complaint in this Court. On December 28, 2015, the Court reversed the final decision of the Commissioner and remanded the case for further proceedings. Doc. No. 631-32; *Finnerty v. Commissioner*, No. 6:14-cv-2052-Orl-28KRS, Doc. No. 21 (M.D. Fla. Dec. 12, 2015).

On remand, the Appeals Council vacated the final decision of the Commissioner and remanded the case to an Administrative Law Judge ("ALJ") for proceedings consistent with the Court's order. R. 657. While the appeal was pending, Finnerty filed another SSI application. R. 760. The Appeals Council directed the ALJ to consolidate the new application with the previous applications and to issue a new decision. R. 657.

An ALJ held another hearing on December 22, 2016. Finnerty, accompanied by an attorney, and a vocational expert ("VE") testified. R. 576-607.

After considering the hearing testimony and the evidence in the record, the ALJ found that Finnerty was insured under OASDI through December 31, 2003. R. 556. The ALJ concluded that Finnerty had not engaged in substantial gainful activity since July 6, 1998, the alleged disability onset date. *Id.*

The ALJ found that Finnerty had the following severe impairments: diabetes mellitus with peripheral neuropathy; lumbar degenerative disc disease; and adhesive capsulitis of the shoulder. *Id*. These impairments, individually and in combination, did not meet or equal a listed impairment. R. 558.

The ALJ found that Finnerty had the residual functional capacity ("RFC") to perform light work with the following additional limitations:

> [T]he claimant can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant cannot climb ropes, ladders, or scaffolds. The claimant cannot reach overhead, and can tolerate no more than frequent handling with his dominant, right upper extremity. The claimant must avoid concentrated exposure to wetness, humidity, vibrations, work around moving, mechanical parts, or work around unprotected heights. The claimant is limited to work that allows for a 30-minute sit-stand option, with the claimant being given a five-minute stretch break at the workstation.

*Id.* In making this assessment, the ALJ found that Finnerty's reports of functional limitations were not entirely consistent with medical evidence and other evidence in the record. R. 560.

The ALJ found that Finnerty could not return to his past relevant work as a certified nursing assistant. R. 565. After considering the testimony of the VE, the ALJ concluded that there were light and sedentary unskilled jobs available in the national economy that Finnerty could perform. R. 566-67. Therefore, the ALJ concluded that Finnerty was not disabled. R. 567. Finnerty did not file exceptions to this decision and, therefore, it became the final decision of the Commissioner.

Finnerty now seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Finnerty having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the relevant facts are adequately stated in the ALJ's decision and the parties' Joint Memorandum, which statement of facts I incorporate by reference. I will only summarize the evidence to the extent relevant to the issues raised in the Joint Memorandum.[2]

Finnerty was born in 1965. R. 28. He completed three years of college, and he previously worked as a certified nursing assistant ("CNA"). R. 191. The medical records reflect that Finnerty reported that he injured his back in 1997 while transferring a patient. R. 368, 395.

During the original hearing before an ALJ in 2013, Finnerty testified that he experienced sharp back pain that radiated down his right leg. Walking was difficult. He estimated that he could walk fifteen to twenty feet using an assistive device. R. 41-42. He could stand about fifteen minutes using an assistive device. He could sit for about thirty minutes before needing to change positions. He could lift and carry five pounds. R. 43. During a typical day, he watched television, used a computer and spent much of the day lying down. He could make meals. R. 46. He used an electric cart to shop. R. 47.

During the hearing after remand, Finnerty reported sharp pain in his back above the belt line. R. 582-83. He used a cane or crutches when walking. R. 587-88. He estimated that he could lift five pounds and walk about ten yards using an assistive device. R. 591.

---

[2] The original Report and Recommendation summarized the evidence of record as of the time of first appeal. R. 633-52.

The medical records reflect that in April 1998, Thomas Brodrick, M.D., diagnosed Finnerty with lumbosacral spine strain with probable degenerated disk at 4-5 and 5-1. R. 367. As of April 27, 1998, Finnerty was working light duty as a CNA. *Id*.

Aron Newfield, D.O., an orthopedist, began treating Finnerty on June 30, 1998 for complaints of right low back pain radiating into his right hip. R. 395-99. After examining Finnerty and reviewing x-rays, Dr. Newfield's diagnoses were probable lumbar disc syndrome with some degree of right sciatic neuritis and chronic lumbo-sacral sprain. R. 397-98. On July 13, 1998, Dr. Newfield opined that Finnerty was unable to work due to lumbar disc syndrome. R. 394. On September 28, 1998, Finnerty returned to Dr. Newfield for a follow-up appointment. R. 388. Dr. Newfield warned Finnerty to be careful of any excessive bending, lifting, and twisting. *Id.*

On December 7, 1998, EMG nerve conduction studies revealed abnormalities "consistent with peripheral neuropathy, probably secondary to the diabetes." The studies showed no electrodiagnostic evidence of lumbosacral radiculopathy or lumbosacral plexopathy. R. 385.

On March 24, 1999, Kenneth B. Hawthorne, Jr., M.D., an orthopedist, conducted an "Independent Medical Examination" of Finnerty. R. 404-07. Dr. Hawthorne noted on examination that Finnerty had no instability, mal-alignment, or crepitants; no swelling; and no spasms of the paraspinal muscles. R. 405. Finnerty had normal and equal reflexes; decreased sensation and weakness in his right leg, but intact sensation and muscle strength in his left leg; no pain with range of motion of the hips, knees, or ankles; and a negative straight leg raising test. R. 405-06. Dr. Hawthorne concluded that Finnerty's examination was inconsistent with a herniated lumbar disc, and he was unsure as to what was causing weakness in Finnerty's right leg because it did not correlate with any reasonable pathology that might be present. R. 406.

Dr. Hawthorne noted Finnerty's MRI scan showed a bulging disc. An EMG and nerve conduction study revealed no evidence of nerve injury. R. 406.

Dr. Hawthorne diagnosed "Preexisting degenerative disc disease, L4-5," "Chronic lumbar spine strain secondary to work related injury," and "Diskogenic lower back pain with no objective findings of a herniated disc." R. 406. He stated that Finnerty had numbness and weakness in the right lower extremity. *Id.* Dr. Hawthorne believed that Finnerty could perform light-duty work with no lifting over twenty pounds; he could do no repetitive lifting; he could occasionally bend, squat, kneel, crawl, and use his upper extremities for overhead work; he could do unlimited sitting, three to four hours of standing, and three to four hours of walking. R. 407.

On March 1, 2001, Dr. Hawthorne reviewed a CT myelogram of Finnerty's lumbar spine which revealed minimal spinal canal stenosis at the L2-3 and L3-4 levels, a bulging disc, and some hypertrophy of the ligament flavum. R. 400; *see also* R. 401-03. Dr. Hawthorne noted that there was no disc herniation or evidence of nerve root injury. Upon examination, Dr. Hawthorne observed that Finnerty displayed a reduced range of motion of his lumbar spine and tenderness in his paraspinal muscles. Finnerty had no muscle spasms, and he had normal and equal reflexes. Dr. Hawthorne diagnosed "[c]hronic back pain status post work related injury," but no evidence of disc injury. He opined that Finnerty could "return to light-duty work with no lifting greater than 10 pounds and no repetitive bending." He indicated that Finnerty could sit, stand, and walk for unlimited periods of time. R 400.

On January 9, 2007, Sam Ranganathan, M.D., examined Finnerty at the request of the Office of Disability Determinations. He diagnosed degenerative joint disease of the lumbar spine, history of diabetes mellitus type one, and possible rotator cuff tear. R. 283. Finnerty reported to Dr. Ranganathan that he cooked, washed the dishes, drove, was able to shower and

dress, did his laundry, occasionally vacuumed, sometimes took the garbage out, and rode a garden tractor. R. 282. Upon physical examination, Dr. Ranganathan observed that Finnerty walked without an assistive device, had slightly reduced grip strength in the right hand, and had discomfort with range of motion in the shoulder. Dr. Ranganathan noted Finnerty could tandem, heel, and toe walk; he was able to get on and off the examination table; and he was able to sit on the examination table and in the waiting room. Dr. Ranganathan indicated that x-rays of Finnerty's lumbar spine revealed osteophytes in the anterior end plates at L4-5 and preserved intervertebral disc spaces. R. 283. Dr. Ranganathan documented a reduced range of motion in the lumbar spine and the right shoulder. R. 284.

Finnerty visited Good Samaritan Clinic on August 8, 2011, to establish care. Celeste Philip, M.D., noted, among other things, that Finnerty had an "ankle screw protruding – painful [with] walking" and low back pain. R. 303.

Finnerty was also treated by Royce Hood, M.D., an orthopedist. On July 10, 2012, Dr. Hood observed on examination that Finnerty had a negative straight leg raising test and no motor weakness. X-rays of Finnerty's lumbar spine showed no obvious bony or soft tissue abnormalities. Dr. Hood diagnosed Finnerty with "[c]hronic back pain with previously demonstrated L4-5 and L5-S1 disc pathology," among other conditions. R. 522.

On July 23, 2012, Finnerty visited Jonathan Waldbaum, M.D., for complaints of radicular low back pain. R. 519-21. On examination, Dr. Waldbaum noted that Finnerty exhibited mild weakness in his right leg and tenderness and decreased motion in his back. Dr. Waldbaum also noted that an MRI scan of Finnerty's lumbar spine showed evidence of disc bulging at L4-L5 and L5-S1 with some associated facet arthropathy and stenosis. R. 520.

When Finnerty returned on August 29, 2012, Dr. Waldbaum noted that Finnerty's gait and station were stable and his upper extremity strength and range of motion were functional. R. 514-15. Dr. Waldbaum advised Finnerty to continue his home exercise program and medication regimen, which was helping control his symptoms and improve/maintain his functioning. R. 515.

Finnerty returned to Dr. Waldbaum's office on October 5, 2012. R. 512-13. Dr. Waldbaum diagnosed Finnerty with lumbosacral radiculopathy, lumbar degenerative disc disease, spinal stenosis, and diabetic neuropathy. Dr. Waldbaum could not explain Finnerty's severe degree of pain and referred Finnerty to Stephane Lavoie, M.D., for a surgical opinion. R. 512.

On October 22, 2012, Dr. Lavoie examined Finnerty and noted that he exhibited mildly restricted range of motion in his lumbar spine, mild weakness in his right leg, and minimal altered sensation in his legs. R. 510-11. Dr. Lavoie noted that an MRI scan of Finnerty's lumbar spine showed degenerative disc disease, facet arthritis, and no significant stenosis. Dr. Lavoie diagnosed Finnerty with lumbosacral radiculopathy, lumbar degenerative disc disease, spinal stenosis, and diabetic neuropathy. R. 511. He did not believe surgery would improve Finnerty's condition. *Id.*

On January 30, 2014, Finnerty presented to Jerry Leventhal, M.D., as a new patient. He did not report any musculoskeletal symptoms and the examination was unremarkable. R. 866-67; *see also* R. 871.

On April 8, 2014, Paulette Mattis, ARNP, observed that Finnerty walked with a cane. Upon examination, ARNP Mattis found that Finnerty had full muscle strength in his extremities. R. 876.

On February 14, 2015, Finnerty sought emergency room treatment for a headache and elevated blood pressure. The treatment note reflects that Finnerty did not complain of back or muscle pain. R. 899. The musculoskeletal examination revealed normal range of motion and strength with no tenderness. R. 900.

On April 22, 2016, a provider from Family Health Source Medical Center prescribed Finnerty a cane for ambulation. R. 948. The few treatment notes in the record from this provider do not explain why the cane was prescribed. R. 947-50, 954-65.

## ANALYSIS.

In the Joint Memorandum, which I have reviewed, Finnerty raises two assignments of error. First, he contends that the ALJ erred by failing to expressly discuss Dr. Hawthorne's opinion that he should be limited to no lifting greater than ten pounds. Second, he argues that the ALJ erred by considering only objective evidence when making his credibility assessment. He asks that the Court reverse the final decision of the Commissioner and remand the case for an award of benefits. These are the only issues I will discuss.

*Opinion of Dr. Hawthorne.*

Dr. Hawthorne conducted an independent medical examination. Following his initial examination, Dr. Hawthorne opined that Finnerty could return to light duty work. During a second examination after Finnerty had a CT myelogram of his lumbar spine, Dr. Hawthorne again opined that Finnerty could return to light duty work with no lifting greater than ten pounds. In the decision, the ALJ referred to Dr. Hawthorne's opinion regarding returning to light duty work but he did not mention the restriction to no lifting greater than ten pounds. R. 561. Finnerty contends that the failure to discuss the lifting restriction was error.

First, there is no rigid requirement that an ALJ specifically refer to every piece of evidence in the record so long as it is evident that the ALJ considered the record as a whole. *Dyer*, 395 F.2d at 1211. The ALJ decision on remand is thorough and establishes that he considered the record as a whole.

Second, Dr. Hawthorne was not a treating physician. Therefore, his opinions were not entitled to any deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).

Third, although the ALJ did not explicitly state the weight given to Dr. Hawthorne's opinions, the decision is clear that the ALJ assigned the portion of his opinion regarding a ten-pound lifting restriction no weight. *Cf. Owens v. Comm'r of Soc. Sec.*, No. 6:16-cv-1778-Orl-DCI, 2018 WL 783620, at *4 (M.D. Fla. Feb. 8, 2018)(finding the failure to state the weight given to a medical opinion harmless when the decision was clear that the ALJ assigned the opinion less than controlling weight). The ALJ stated that he assigned "more weight to examinations that concluded that the claimant retained a normal range of motion and normal strength in his musculoskeletal system[.]" R. 563. The ALJ correctly noted Dr. Hawthorne's March 24, 1999 opinion that there was no reasonable pathology to correlate with Finnerty's complaints of weakness. R. 561. The record also reflects that, after seeing the results of the CT myelogram, Dr. Hawthorne reiterated that he did not believe that Finnerty "has any surgical pathology present." R. 400. It is, therefore, not evident why Dr. Hawthorne included the ten-pound lifting restriction following review of the CT myelogram. Finally, the ALJ cited other evidence in the record that showed mild to normal findings on examination, including full muscle strength in Hawthorne's extremities, and normal alignment and range of motion and lack of tenderness in the back. R. 561-64. Therefore, the failure to discuss Dr. Hawthorne's lifting restriction and to explicitly weight Dr. Hawthorne's opinions is harmless.

For these reasons, I recommend that the Court find that the first assignment of error is not well taken.

*Credibility.*

In the second assignment of error, Finnerty argues, in a conclusory manner, that the ALJ erred in his credibility assessment because he "focused exclusively on the objective medical evidence to disregard Mr. Finnerty's testimony regarding his pain and limitations." Doc. No. 16, at 33. This argument is belied by careful reading of the ALJ's decision.

In his decision, the ALJ summarized Finnerty's subjective reports of his symptoms. R. 559. He concluded that Finnerty had medically determinable impairments that could reasonably be expected to cause the alleged symptoms. R. 560. Consistently with the pain standard in this Circuit, the ALJ then considered the record as a whole in determining that Finnerty's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" R. 560.

The ALJ then articulated explicit and adequate reasons to support this conclusion. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). These reasons include (1) Finnerty returned to light duty work as a CNA after the original alleged disability date; (2) various medical records reflected normal findings on examination of Finnerty's back with lack of tenderness and full muscle strength in his extremities; and, (3) imaging studies showed normal or relatively mild findings. R. 560-65. All of these reasons are supported by substantial evidence in the record. Nevertheless, the ALJ credited Finnerty's testimony that he would need to shift positions by including a sit/stand option in the RFC, R. 563, which explicitly undermines Finnerty's argument that the ALJ disregarded his subjective reports of his limitations.

For these reasons, I recommend that the Court find that the second assignment of error is not meritorious.

### RECOMMENDATION.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the Court **AFFIRM** the final decision. I further **RECOMMEND** that the Court direct the Clerk of Court to enter a judgment consistent with its findings on this Report and Recommendation and, thereafter, to close the file.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on June 5, 2018.

    *Karla R. Spaulding*
    KARLA R. SPAULDING
    UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy